UNITED STATES of America, Appellee,

v.

Glen W. MARSH, Appellant
(Two Cases).

Nos. 90–5422, 90–5426.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1991.

Decided May 2, 1991.

John W. Lundquist of Minneapolis, Minn., for appellant.

Elizabeth de La Vega, Minneapolis, Minn., for appellee.

Before FAGG and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Glen Marsh pled guilty to three counts of mail fraud in violation of 18 U.S.C. § 1341. The district court sentenced Marsh to eight and one-half years imprisonment and ordered him to pay $3 million to the victims he defrauded. The district court denied a motion to reduce the amount of restitution. 741 F.Supp. 1361. Marsh appeals this denial. In addition, he contends that the district court violated his due process right to fair sentencing.

## FACTS

As a successful real estate agent, Marsh had gained numerous loyal clients. Begin-

ning in 1982, he exploited this client base to solicit investors for the purchase of "Contract Equity Funding Notes," which he advertised as producing a 20% yield over five years. Marsh informed the investors that he was pooling their money to purchase contracts for deed in residential real estate and that he could purchase the contracts for deed at a 25% discount. From 1982 until 1986, Marsh sold $4 million worth of the Contract Equity Funding Notes to approximately seventy-one investors.

Marsh did not use the invested funds to purchase real estate. Instead, he used the money to maintain a lavish personal lifestyle. Resultantly, in 1986, he mailed each of the investors the following letter:

Dear Creditor:

Regretfully we must inform you that due to default in some of our receivables we are unable to continue timely payment(s) on your accounts with us. We are attempting to resolve this situation and will advise you further.

The government indicted Marsh in 1989 on fifteen counts of mail fraud stemming from his investment scheme. Marsh pled guilty to three counts of this indictment. One of these counts identified a victim whom Marsh defrauded of $75,000; the other two counts specified fraudulent transactions involving $10,875 and $21,000, respectively. The plea agreement expressly provided that "the court may impose restitution up to the full loss suffered by the victims identified in the attachment to the indictment." The referenced attachment identified seventy-one investors who invested over $4 million. The court ordered Marsh to pay $3 million in restitution under the provisions of the Victim and Witness Protection Act, 18 U.S.C. §§ 3663 and 3664, and sentenced him to eight and one-half years imprisonment.

## DISCUSSION

### I.

■ Marsh argues that the sentencing court's reliance on improper and inaccurate information violated his due process right to fair sentencing. Marsh objects to the district court's reference at his sentencing hearing to the plight of three of the victims. The sentencing judge chronicled the disastrous impact that Marsh's crime had on each of these victims. Marsh contends that this judicial recital was inappropriate, because there is no proof that Marsh's activities actually caused the deleterious effects suffered by these victims. Thus, according to Marsh, he was sentenced on the basis of inaccurate information in violation of *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), and *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). *See also United States v. Rone*, 743 F.2d 1169, 1171 (7th Cir.1984) (a "sentence must be set aside where the defendant can demonstrate that false information formed part of the basis for the sentence").

While we agree with Marsh that he must be sentenced on the basis of accurate information, we do not believe that the district court violated his due process rights. In this case, the district court did not give particular weight to the victims' statements of woe in fixing Marsh's sentence. Rather, the court referred to these statements in order to compare the lifestyle of the victims with that of Marsh. Immediately after chronicling the conditions of the three victims, the court commented:

There are many examples of the type that I have just given of people who lost their funds.

While in the meantime, apparently you, Mr. Marsh, were living on the high road with expensive clothes and chauffeured cars, a fancy office, and the like. It seems to me that your actions are shameful and disgraceful examples of white-collar crime, and, as such, must be treated as any other type of crime.

These comments demonstrate that the district court's purpose in reviewing the condition of the three victims was to generally contrast their plight with Marsh's fortune. Drawing such an illustrative contrast was not inappropriate. Accordingly, we affirm the sentence imposed by the district court.

### II.

■ Marsh next argues that the district court's order of restitution exceeds that

authorized by the sentencing statute. The Victim and Witness Protection Act of 1982 (VWPA) authorizes federal courts to order convicted defendants to make restitution to the victims of their offenses. *See* 18 U.S.C. § 3663(a). Recently, the Supreme Court held that the "language and structure of the [Victim and Witness Protection] Act makes plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, — U.S. —, —, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408, 413 (1990). Marsh argues that in light of *Hughey*, the order of restitution in his case should be limited to the damages specifically alleged in the counts to which he pled guilty. Under Marsh's theory, his offenses of conviction are limited to the specific acts to which he pled guilty, which involved damages totaling $106,875. Thus, according to Marsh's argument, his restitution liability should be limited to that amount.

The government argues that because Marsh was convicted of a mail fraud scheme, he is accountable for losses arising from the entire scheme. According to the government, where a defendant pleads guilty to a mail fraud scheme, the offense of conviction for purposes of restitution includes the entire scheme, since the existence of the scheme is an element of the crime itself. Therefore, when a defendant pleads guilty to specific counts of mail fraud, he is admitting liability for the entire scheme, and restitution may be ordered as to compensate all the victims of that scheme. Some case law that pre-dates *Hughey* supports this proposition. *See, e.g., United States v. Vance*, 868 F.2d 1167, 1170 (10th Cir.1989) (where defendant pleaded guilty to two counts of multi-count bank fraud indictment, restitution properly ordered for total loss to banks because scheme was appropriately treated as a unitary offense). The government attempts to distinguish *Hughey* from this case on the ground that *Hughey* did not involve losses stemming from a single, unitary scheme. We disagree with the government's reasoning.

In *Hughey*, the Supreme Court granted certiorari to resolve the split in authority "regarding a court's ability under VWPA to require an offender to pay restitution for acts other than those underlying the offense of conviction." — U.S. at —, 110 S.Ct. at 1982, 109 L.Ed.2d at 414. In canvassing the circuit courts' rulings on this issue, the Supreme Court noted that:

> The Ninth Circuit has ruled that "in cases which involve a continuing scheme to defraud 'it is within the power of the court to require restitution of any amount up to the entire illicit gain from such a scheme, even if only some specific incidents are the basis of the guilty plea.'" *United States v. Pomazi*, 851 F.2d 244, 250 (1988) (quoting *United States v. Davies*, 683 F.2d 1052, 1055 (CA7 1982)).

*Hughey*, — U.S. at — n. 2, 110 S.Ct. at 1982 n. 2, 109 L.Ed.2d at 415 n. 2. Because the Supreme Court included *Pomazi* in its reference to the split in authority, the Court intended *Hughey* to apply to cases like *Pomazi;* in other words, *Hughey* applies to cases involving continuing schemes to defraud. Therefore, even in an ongoing, unitary scheme, the defendant can be held liable in restitution only for the specific acts to which he pleads or is found guilty.

The Ninth Circuit supports this interpretation of *Hughey*. In *United States v. Sharp*, 1991 WL 27385 (9th Cir.1991), that court ruled: "We read *Hughey* to overrule *Pomazi* and limit restitution in a wire fraud scheme to the amount specified in the count to which the guilty plea was made." *Id.* 1991 WL 27385, at 1. In reaching this decision, the Ninth Circuit expressly rejected the government's argument "that *Hughey* does not affect Sharp's restitution order because one of the elements of wire fraud is the existence of an underlying scheme." *Id.* 1991 WL 27385, at 3. Thus, in *Sharp*, because the defendant pled to only two counts of a sixty-three count indictment, he could be liable only for acts charged in those counts, and not for the entire $8.5 million scheme, even though the entire scheme was incorporated by reference into each count. *Id.* 1991 WL 27385, at 3.

In terms of ordering restitution, it is irrelevant whether the crime charged is one

requiring an underlying scheme or one that does not require such a showing. In either case, restitution is limited to the specific conduct underlying the convictions. Nonetheless, we affirm the district court's restitution award in this case.

In his plea agreement, which was executed before *Hughey* was decided, Marsh specifically agreed that "the court may impose restitution up to the full loss suffered by the victims identified in the attachment to the indictment." As noted earlier, the attachment listed seventy-one fraud victims, whose losses exceeded $4 million. Thus, the district court acted in conformity with the plea agreement when it ordered restitution in the amount of $3 million. We affirm the order of restitution on this basis.

## CONCLUSION

We affirm the sentence imposed and the restitution ordered by the district court.

FAGG, Circuit Judge, concurring, with whom BOWMAN, Circuit Judge, joins.

I join in part I and concur in the result in part II.