**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lawrence SNIDER, Defendant-Appellant.**

**No. 90-30024.**

United States Court of Appeals, Ninth Circuit.

Submitted May 6, 1991.*

Decided Sept. 26, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).

Michael Nance, Nance, Iaria & Gombiner, Seattle, Wash., for defendant-appellant.

Stephen C. Schroeder, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT and O'SCANNLAIN, Circuit Judges and PRO,** District Judge.

PER CURIAM:

Lawrence Snider, who pled guilty to a money laundering charge, challenges the restitution component of his sentence on two grounds. First, he contends that the district court's order is unlawful because it requires him to pay an amount in excess of the loss alleged in the indictment to which he pled guilty. Second, he contends that his acknowledgment of the district court's apparent power to order such "excessive" restitution was not an agreement to pay such restitution and did not constitute a waiver of his right to appeal. We agree with Snider on both grounds and reverse.

I

On September 5, 1989, Snider pled guilty to a one-count information charging him with structuring a financial transaction to evade federal reporting requirements in violation of 31 U.S.C. §§ 5322(a) and 5324. A written plea agreement, which Snider signed, stipulated the factual basis for his plea. According to that stipulation, Snider participated in the sale and promotion of a fraudulent debt-elimination scheme from March until September 1987. Snider's role was to accept applications from people who wished to eliminate their debts, collect between ten and twenty percent of the amount of those debts, and submit the applications and the fees to another person involved in the scheme. Thereafter, Snider received bank drafts drawn on a fictitious financial institution for the full amount of the customers' debts and presented the drafts to the customers' creditors. The customers would then assume that their debts had been discharged, only to be informed subsequently that the drafts were fraudulent and that their debts were still outstanding.

Snider's information and guilty plea were based on a single transaction in which the victim suffered a loss of $18,750. The plea agreement, which Snider signed pursuant to his plea, contained the following language:

Lawrence E. Snider understands that the maximum penalty which the Court may impose upon his plea of guilty is imprisonment for a period not to exceed five (5) years, a fine not to exceed $250,000.00, or both. Lawrence E. Snider acknowl-

** The Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

edges that the Court may direct him to pay restitution up to the amounts listed in the column captioned "Fee (15%)" in the Stipulated Factual Basis for Plea. Lawrence E. Snider acknowledges that no promises of any type have been made to him with respect to the sentence in this matter, with the exception that the Government promises to make the Court fully aware of the nature and extent of his cooperation prior to sentencing.

Plea Agreement at ¶ 1, *United States v. Snider,* No. 88–369 (W.D.Wash. Sept. 5, 1989). The amounts listed in the column captioned "fee (15%)" totalled $183,250.

On December 15, 1989, the district court sentenced Snider. It assigned him to the custody of the Attorney General for imprisonment for a term of eighteen months and further ordered that he pay restitution in the amount of $183,250, to be paid jointly and severally with his codefendants who had been convicted in a separate action. Snider then filed this timely appeal, in which he challenges only the restitution component of his sentence.

## II

We review the legality of a criminal sentence, including its restitution component, de novo. *United States v. Barany,* 884 F.2d 1255, 1259 (9th Cir.1989), *cert. denied,* 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990). If the sentence complies with statutory requirements and limits, then we review it for an abuse of discretion. *Id.*

■ The district court's order of restitution in the immediate case does not specify whether it was entered under the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 3663–64, or under the Federal Probation Act ("FPA"), 18 U.S.C. § 3651, *repealed by* Pub.L. No. 98–473, tit. II, 98 Stat. 1987, 2031. The distinction is important because, as we recently

acknowledged in *United States v. Duvall,* 926 F.2d 875, 876 (9th Cir.1991), restitution orders entered under the FPA are not controlled by the Supreme Court's recent decision in *Hughey v. United States,* —— U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). The *Hughey* decision defines in part the outer limits of what constitutes permissible restitution under the VWPA.

As a threshold matter, therefore, we must determine whether the FPA or the VWPA governs and whether the *Hughey* decision applies. In *United States v. Pomazi,* 851 F.2d 244, 247 (9th Cir.1988), *overruled on other grounds, Hughey,* 110 S.Ct.1979, we recognized that the FPA only authorizes restitution as a condition of probation, but that the VWPA is not so limited. Because the district court did not even grant Snider probation, let alone condition his probation upon the payment of restitution, it follows that the FPA does not authorize the court's order. We therefore hold that in order to withstand Snider's challenge, the district court's order must comply with the VWPA and with the Supreme Court's recent decision in *Hughey.*[1]

## III

### A

■ In *Hughey,* the Supreme Court unanimously held that "the language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution *only for the loss caused by the specific conduct that is the basis of the offense of conviction.*" 110 S.Ct. at 1981 (emphasis added). In *United States v. Sharp,* 941 F.2d 811, 815 (9th Cir.1991), this court recently expanded on *Hughey* and held that "[e]ven when the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction." In so holding, we ex-

---

1. The district court sentenced Snider on December 17, 1990 on the basis of the plea agreement, which was executed on September 5, 1989. The Supreme Court announced its decision in *Hughey* on May 21, 1990—before the district court entered its order but *after* the parties executed their agreement. Both the plea agreement and the sentence therefore demonstrate a pre-*Hughey* understanding of the law. Nonetheless, we must apply the law as it stands today. *See Rubin v. Belo Broadcasting Corp. (In re Rubin),* 769 F.2d 611, 614 (9th Cir.1985).

pressly rejected the identical argument that the government has presented here:

> [T]he government asserts that Sharp should not be allowed to challenge the restitution order because he was informed at the time of his pleas that restitution for the entire scheme may be ordered. However, the VWPA itself, while it seeks "the fullest possible restitution from criminal wrongdoers," seeks that restitution without infringing on the constitutional rights of the defendant. *Hughey*, [110 S.Ct.] at 1985. The government's efforts to inform Sharp of the breadth of possible restitution does [sic] not save the restitution order from the *Hughey* command that restitution orders beyond the offense of conviction are illegal.

*Id.* 941 F.2d at 815 (footnote omitted); *see also id.* at 815 n. 2; *United States v. Garcia*, 916 F.2d 566 (9th Cir.1990) (similarly applying *Hughey* to vacate an order that required the defendant "to pay restitution for a crime for which he was charged but not convicted").

Our holding in *Sharp* also acknowledged that the Supreme Court's decision in *Hughey* overruled *United States v. Pomazi*, 851 F.2d 244 (9th Cir.1988), an earlier decision in which we had reached the opposite conclusion and had upheld a restitution order based in part on dismissed mail-fraud charges under the rationale that all the losses were attributable to one overall criminal scheme to defraud. *See Sharp*, 941 F.2d at 815 ("We therefore hold that *Hughey* overrules *Pomazi* with regard to restitution under the VWPA."); *see also Hughey*, 110 S.Ct. at 1982 n. 2 (citing the reasoning of *Pomazi*, which the Court proceeds to reject, as one of the varying circuit interpretations that prompted the Court to grant certiorari).

Because our recent decision in *Sharp* is squarely on point and is therefore dispositive; because the reasoning of *Pomazi*, which would otherwise support the district court's order, has been expressly overruled and is no longer good law; and because the Supreme Court expended one of its rare grants of certiorari to decide this question once and for all in *Hughey*—which it then did—the district court's order cannot stand.

**B**

■ The government purports to distinguish *Hughey, Sharp*, and *Pomazi* on grounds that the plea agreements at issue in those cases did not explicitly address the matter of restitution, whereas the defendant in this case expressly *agreed* to pay restitution in an amount in excess of that attributable to the offense of conviction. Assuming for the sake of argument that Snider did agree to such terms, this is a distinction without a difference.

*Hughey* held that the VWPA does not *authorize* an award of restitution for amounts not attributable to "the specific conduct that is the basis of the offense of conviction." 110 S.Ct. at 1981. Whatever the parties may have agreed is irrelevant where there is no statutory authority to entertain the agreement. Under *Hughey*, the district court was without power to order the restitution *even assuming* that the parties agreed to it, and that holding settles the matter. There is nothing in *Hughey* to suggest that the parties may "waive the statute" and agree to restitution in amounts over and above the amount authorized by the statute.[2]

---

**2.** In *United States v. Marsh*, 932 F.2d 710, 712–13 (8th Cir.1991), the Eighth Circuit recently reached the opposite conclusion and held that a district court can order restitution in an amount exceeding the loss attributable to the specific conduct underlying the offense of conviction where the parties have explicitly agreed to it in the plea agreement. We believe that *Marsh* is incorrect. Although we do not deny the ability of litigants to enter private contracts that contemplate the payment of restitution, we cannot agree that restitution entered under the VWPA *as a component of the defendant's sentence* can

mandate the payment of amounts in excess of that attributable to the offense of conviction. Following *Hughey*, we reach our conclusion as a matter of statutory interpretation, but we are mindful of the constitutional infirmity of the *Marsh* approach and of the conclusion that a defendant may be sentenced for something for which he has not been convicted.

We also note that the *Marsh* court's analysis of *Hughey* received the full support of only the authoring judge. The two other judges concurred in the judgment only. *See Marsh*, 932

Moreover, Congress amended the VWPA five months *after* the *Hughey* decision specifically to allow courts to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." *Crime Control Act of 1990*, Pub.L. No. 101–647, § 2509, 104 Stat. 4789, 4863 (1990) (to be codified at 18 U.S.C. § 3663(a)(3)). The mere fact that Congress thought that this legislation was necessary in the wake of *Hughey* dispels any suggestion that the VWPA, at the time of Snider's plea, already authorized such restitution.[3]

## C

■ The government's error on this point stems from its apparent assumption that "a deal is a deal": that a criminal defendant's plea agreement is a bargain governed solely by the dictates of contract law and that a restitution order is in the nature of a settlement for civil damages. This is an erroneous assumption. As numerous decisions by this and other courts have recognized, restitution under the VWPA is a criminal penalty more in the nature of a criminal fine than in the nature of a civil remedy; it is a component of the defendant's sentence. As Judge Farris explained for this court in *United States v. Keith,* 754 F.2d 1388 (9th Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985):

> Congress intended restitution under the [VWPA] to be a criminal penalty carrying the stigma associated with other authorized criminal sanctions. Under the Act, a court "sentencing" a defendant convicted of specified federal criminal offenses may order restitution "in addition to or [ ... ] in lieu of any other penalty authorized by law." 18 U.S.C. [§ 3663(a)]. Unlike an award of damages in a civil action, a restitution order under the Act may compensate only for the kinds of harms enumerated ... and does not bar a subsequent civil action for damages based upon the same incident.

754 F.2d at 1391. Writing for the Southern District of New York, Judge Carter has similarly explained:

> It is clear that Congress intended victim restitution to be a criminal, not a civil penalty. The [VWPA] considers restitution part of the defendant's "sentencing"—a feature of criminal, not civil proceedings. Under [section 3664(a)], the sentencing court can order restitution only after taking into account the financial resources of the defendant, his earning ability and the financial needs of his dependents—considerations generally not relevant to the amount of damages awarded in a civil case. The legislative history also reflects Congress' intent that restitution be a criminal penalty....
>
> It is true that a restitution order has some of the characteristics of a civil judgment—it is compensatory, and enforceable at civil law. However, "these characteristics do not transform a criminal sentence into a civil adjudication...." [*United States v. Brown,* 744 F.2d 905, 908 (2d Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984)]. Though restitution may serve some of the same functions of a civil judgment, it also achieves the traditional purposes of punishment—it can deter potential offenders, serves society's legitimate interest in peaceful retribution, and can be a useful step toward rehabilitation.

*United States v. Ciambrone,* 602 F.Supp. 563, 568 (S.D.N.Y.1984); *see also United States v. Satterfield,* 743 F.2d 827, 837 (11th Cir.1984) ("The legislative history of the VWPA reinforces our conclusion that Congress intended to make restitution an element of the criminal sentencing process and not an independent action civil in nature. The history is replete with references to restitution as part of the criminal sentence.... There can be little doubt that Congress intended the restitution penalties of the VWPA to be incorporated into the traditional sentencing structure."); *United States v. Bruchey,* 810 F.2d 456,

F.2d at 713 (Fagg and Bowman, JJ., concurring). *Marsh's* reasoning on this point therefore does not appear to constitute settled law even in the Eighth Circuit.

3. Congress's revision to the VWPA took effect on November 29, 1990. Snider signed his plea agreement on September 5, 1989, more than fourteen months earlier.

458–61 (4th Cir.1987) (similarly concluding that restitution under the VWPA serves the traditional purposes of criminal punishment and is fundamentally penal in nature); *Brown,* 744 F.2d at 908–11 (same).

Because restitution under the VWPA is a criminal penalty, its imposition must comport with the substantive and procedural requirements of due process. In addition, the VWPA itself "impose[s] important substantive and procedural limitations on the trial judge's discretion" to order restitution. *Bruchey,* 810 F.2d at 458. The restitution order in the immediate case exceeds statutory limits on the court's authority and very possibly exceeds constitutional limits as well. *See supra* note 2. It is, one would think, fundamental to our constitutional system that a court cannot order a defendant to suffer a criminal penalty or to pay a criminal fine for any offense for which the defendant has not been formally convicted. In light of the Supreme Court's recent decision in *Hughey,* however, we need not confront that serious constitutional question. Under *Hughey,* it is clear as a matter of *statutory* construction that a court cannot order restitution under the VWPA when the defendant has not been convicted for the underlying offense to which that restitution relates. Avoiding the difficult constitutional issue, we therefore hold that the district court's order in the immediate case violates the VWPA as interpreted by the Supreme Court in *Hughey. See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"); *Three Affiliated Tribes v. Wold Engr., P.C.,* 467 U.S. 138, 157, 104 S.Ct. 2267, 2279, 81 L.Ed.2d 113 (1984) ("It is a fundamental rule of judicial restraint ... that this Court will not reach constitutional questions in advance of the necessity of deciding them."); *Rust v. Sullivan,* — U.S. —, 111 S.Ct. 1759, 1788, 114 L.Ed.2d 233 (1991) (O'Connor, J., dissenting) (quoting *Edward J. DeBartolo* and *Three Affiliated Tribes* ).

## IV

### A

▌ Even if it had been possible for the parties to "waive the statute" and to agree to an award of restitution in excess of the amount authorized by the then-applicable version of the statute, we cannot accept the government's contention that the parties did so in this case. The relevant portion of the plea agreement states:

> Lawrence E. Snider understands that the maximum penalty which the Court may impose upon his plea of guilty is imprisonment for a period not to exceed five (5) years, a fine not to exceed $250,000.00, or both. Lawrence E. Snider acknowledges that the Court may direct him to pay restitution up to the amounts listed in the column captioned "Fee (15%)" in the Stipulated Factual Basis for Plea. Lawrence E. Snider acknowledges that no promises of any type have been made to him with respect to the sentence in this matter, with the exception that the Government promises to make the Court fully aware of the nature and extent of his cooperation prior to sentencing.

Plea Agreement at ¶ 1, *United States v. Snider,* No. 88–369 (W.D.Wash. Sept. 5, 1989). We do not understand this language to constitute an agreement to pay restitution in the total amount listed in the designated column—an amount that represents the full loss alleged to have been caused by Snider's scheme ($183,250)—and not just the amount attributable to the specific conduct underlying the offense of conviction ($18,750). Rather, as Snider suggests, this language appears to be a standard Rule 11 recitation of the maximum penalty that the parties understood the court could impose at the time they formed their agreement.

Under Rule 11 of the Federal Rules of Criminal Procedure, a defendant must openly acknowledge his awareness of the maximum statutory penalty for his offense in order for his guilty plea to be valid. *See*

Fed.R.Crim.P. 11(c)(1). Viewed within the greater context of the parties' agreement, the paragraph in question seems an effort to comply with this requirement and no more; it seems to represent Snider's *acknowledgment*—but not his acceptance of—the maximum possible restitutionary penalty. At the time the parties formed their agreement, that maximum penalty was governed by this court's decision in *Pomazi*, which held that "the sentencing court's determination of the proper amount of restitution is not limited by the amount of victim losses alleged in the charging instrument" and that "a sentencing court may order restitution paid to victims of the entire scheme even though all of them are not named in the indictment or information." *Pomazi*, 851 F.2d at 249, 250.

Properly understood, therefore, the passage in question is not an agreement to pay restitution in the amount of $183,250; it is simply an acknowledgment of what was then the prevailing maximum penalty that the court could have directed Snider to pay. The problem, of course, is that *Hughey* overruled *Pomazi*, as we explicitly recognized in *Sharp*. *See Sharp*, 941 F.2d at 815. The parties' acknowledgment is therefore the acknowledgment of a statutory maximum that we now know the court *cannot* direct Snider to pay. In short, the parties formed their agreement under what we, in a post-*Hughey* world, must now perceive to have been an erroneous understanding of the law—the understanding enunciated by *Pomazi*. Snider did not agree to pay restitution in the amount prescribed in the court's current order; he simply acknowledged that the court had the power to enter an order in that amount. The Supreme Court has now told us that the district court does *not* have that power. Snider has therefore acknowledged what is not so, and he cannot reasonably be bound by the terms of that acknowledgment.

## B

■ Finally, even if it had been possible for the parties to waive the applicable version of the statute and to agree to "excessive" restitution, and even if we may assume that the parties did so in this case, the district court's order is *still* void on Rule 11 grounds. Snider could not have voluntarily and intelligently agreed to pay restitution in the amount ordered because the agreement in question was formed when *Pomazi* stated the applicable rule of law. *See supra* note 1. Thus, even if the critical language in the plea agreement was an affirmative *agreement*—and not simply an acknowledgment of the maximum imposable penalty, as we have just held—it was still an agreement based upon *Pomazi*'s erroneous articulation of the law. So while Snider may have voluntarily and intelligently agreed to pay restitution in the maximum amount authorized by law under the *Pomazi* regime, he could not have voluntarily and intelligently agreed to pay that same amount under the *Hughey* regime. He could not have known that what he was really doing was waiving the statute and agreeing to pay an amount beyond that which the court ordinarily has the power to demand; he could only have thought that he was agreeing to pay the ordinary statutory maximum. In short, because *Hughey* was decided after the parties formed their agreement, Snider could not possibly have understood what, in order to affirm, this court would now have to say he intelligently agreed to do.[4]

## V

In light of the foregoing, we vacate the district court's restitution order and remand with instructions to reduce the award to an amount not to exceed $18,750, "the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 110 S.Ct. at 1981. Any order that the court imposes on remand should take

---

**4.** Significantly, even as it amended the VWPA in late 1990 to allow restitution "to the extent agreed to by the parties in a plea agreement," *see supra* page 1112, Congress specifically acknowledged that Rule 11 of the Federal Rules of Criminal Procedure regulates plea agreements.

*See* H.R.Rep. No. 681(I), 101st Cong., 2d Sess. 177 n. 9, *reprinted in* 1990 U.S.Code Cong. & Admin.News 6472, 6583 n. 9. It is clear, therefore, that Congress intended the VWPA, even as it exists today, to be administered in accordance with Rule 11's requirements.

into account the specific considerations listed in the VWPA, 18 U.S.C. §§ 3663–64.

VACATED and REMANDED.

PRO, District Judge, specially concurring:

I concur in the result and in all of the opinion with the exception of parts III C and IV A.