UNITED STATES of America, Appellee,

v.

Wendell RICE, Defendant–Appellant.

No. 523, Docket 91–1428.

United States Court of Appeals,
Second Circuit.

Argued Dec. 9, 1991.

Decided Jan. 9, 1992.

Harold James Pickerstein, Fairfield, Conn. (Trager and Trager, P.C., Kellie J. Garner, of counsel), for defendant-appellant.

Peter A. Clark, New Haven, Conn., Asst. U.S. Atty. for the District of Connecticut (Richard N. Palmer, U.S. Atty. for the District of Connecticut, of counsel), for appellee.

Before FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

Wendell Rice appeals from a judgment of conviction entered in the United States District Court for the District of Connecticut, José A. Cabranes, J., upon a plea of guilty to a four-count information charging Rice with making false statements to a federally insured bank. 18 U.S.C. § 1014. In the negotiations leading to the guilty plea, Rice agreed in writing that he might be subjected to a restitution order in favor of the victims of his conduct and that restitution would not be limited to the counts to which he eventually pled guilty. Thereafter, the district judge sentenced Rice to 18 months imprisonment followed by five years probation and required him to make restitution of $559,071.45 to a title insurance company. The parties agree that this amount exceeds the losses suffered by the victims of the specific offenses to which Rice pled guilty, and that Rice's conduct caused other losses which the government did not make the basis of additional formal charges. The principal question on appeal is whether the district court could take these other losses into account in ordering restitution. We hold that the district court could, and we affirm.

## I. Background

The facts leading up to the restitution order may be briefly summarized. Rice was the president and chief executive officer of Seaview Development Corporation. Seaview's attorney was Steven Kliger, a co-defendant who has not joined in this appeal. Seaview, acting through Rice, obtained financing from a New Jersey bank to develop two condominium projects, Orchard Heights and South Village, in Connecticut. Under the terms of the loan, Seaview had to file monthly reports with the bank on the sales status of each condominium unit. Seaview thereafter sold some units, reported them as unsold, and retained the sales proceeds rather than remitting the loan repayment due the bank upon the sale. Each count of the information to which Rice pled guilty deals with a different monthly sales report, and the sales reports concerned varying numbers of units whose status was falsified.

Thereafter, Rice and Kliger obtained another mortgage from Connecticut National Bank, also collateralized by the Orchard Heights property. The events that occurred with respect to this mortgage, which explain the nature and amount of the challenged restitution order, were set forth on the record in the district court and were not then contested by Rice. In obtaining this mortgage, Rice failed to disclose the earlier New Jersey bank mortgage and falsely represented to the Connecticut bank that it would have a first mortgage position on Orchard Heights. Kliger, who was an authorized representative of Chicago Title Insurance Company, wrote title policies to the Connecticut bank insuring that position.

Thereafter, Seaview defaulted on the Connecticut bank's mortgage. As a result, Chicago Title was obligated by the terms of its policy to purchase the unpaid balance of the New Jersey bank's first mortgage and subordinate it to the Connecticut bank's mortgage to preserve the latter's priority position on Orchard Heights. This required a payment from Chicago Title to the New Jersey bank of $534,438.05. Chicago Title was also required to pay $24,633.40 in unpaid common fees owed by Seaview to Orchard Heights Condominium Association; by operation of state law, these fees took precedence over the Connecticut bank's mortgage. These two sums comprise the total amount of the restitution order.

Rice's guilty plea was taken by Judge Cabranes in February 1990. The written agreement, pursuant to which Rice pled guilty, had a number of provisions. Those most relevant here limited the offenses to which Rice would plead to the four counts described above, and provided with respect to restitution as follows:

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. The defendant agrees that restitution need not be limited to the specific counts to which he pleads guilty, and that the amount and nature of restitution will be entirely within the discretion of the Court.

The reference to 18 U.S.C. § 3663 was to the Victim and Witness Protection Act of 1982 (VWPA).

At the guilty plea proceeding, the government pointed out that Rice's criminal conduct had involved "a number of different banks" and "a number of different transactions." Mr. Pickerstein, Rice's counsel, agreed that there had been "a complex series of transactions," which made the task of ordering restitution difficult. The judge asked Rice's counsel "What would you say is the outside figure for restitution?," to which counsel replied "in an absolute worst case scenario, it could be several millions of dollars." The following colloquy then ensued:

THE COURT: All right. And Mr. Rice knows this, and you know it, Mr. Pickerstein;

that it's possible that if you plead guilty to these charges, the Court may order restitution of whatever the amount may be that it turns out, and it could be,

in the worst case, as Mr. Pickerstein indicated; is that right, Mr. Rice?

THE DEFENDANT: Yes, it is.

After further careful questioning of Rice in accordance with the requirements of Fed. R.Crim.P. 11, the judge accepted the guilty plea.

A few months later, in May 1990, the Supreme Court decided *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408, which dealt with a federal court's authority to order restitution pursuant to the VWPA. The significance of *Hughey* will be discussed below.

In June 1990, co-defendant Kliger entered guilty pleas to charges similar to those against Rice, pursuant to an identical plea agreement. Kliger was sentenced in September 1990 at a proceeding attended by counsel for Chicago Title and counsel for Rice. Chicago Title's losses as of that date on the Orchard Heights project were fully explored in open court. In view of the uncertainty of the total losses at that time, the judge suggested that all parties confer and attempt to agree on a proposed restitution order for defendants Kliger and Rice. All present agreed to this procedure. The court then dealt with all other aspects of Kliger's sentencing and deferred consideration of the restitution order.

In October 1990, the court proceeded with Rice's sentencing, except for the deferred matter of restitution. At the outset, the court noted that it had been provided with Rice's financial affidavit and that the sentence might include restitution. Counsel for Rice at no time mentioned the Supreme Court's recent decision in *Hughey* or that he in any way sought to limit Rice's obligation under the plea agreement to make restitution in an amount deemed appropriate by the court. Counsel did say that "from the very beginning Mr. Rice engaged upon a course of conduct with ... one thing in mind ... to make the injured parties whole," and that "he is prepared to make restitution to the best of his ability," although counsel stressed Rice's poor financial condition. Both Rice and his counsel were aware of the harm to Chicago Title but did not suggest that Rice's liabili-

ty to that company should be tied to the counts of conviction. Rice himself recounted all of his efforts to repay victims and concluded by saying "I stand ready to do whatever else I can, which is probably supply labor, to make restitution."

Counsel for Chicago Title was also present and all (including Rice's counsel) agreed to entry of an order of the same type as co-defendant Kliger's with the details to be worked out in the future. Rice's counsel suggested a meeting of the parties to agree on the order. Fed.R.Crim.P. 35 was specifically mentioned as a means of dealing with a restitution order that might prove to be too high. Counsel for Chicago Title mentioned various pending claims involving Rice and Kliger which went far beyond the scope of the counts of conviction, with no objection or comment from Rice or his counsel. The judge then imposed a partial sentence, indicating that he considered the need to provide restitution to victims more important under the circumstances than a fine. Rice requested a voluntary surrender delayed 90 days for him to engage in "continuing efforts at maximizing assets." Thus, the amount of restitution was left undecided, to be worked out by the parties.

■ After the parties met on several occasions without reaching agreement, a joint restitution hearing to complete the sentencing of both Rice and Kliger was scheduled for April 1991. In preparation for this hearing, the government filed a Memorandum Regarding Restitution, which set forth its view of the court's options at the scheduled hearing, the procedural requirements for a restitution order and the nature and amount of Chicago Title's loss, which was at issue. At that hearing, Rice for the first time raised the claim that the restitution order should be limited to the loss caused by the counts of conviction, citing *Hughey* for that proposition.

A final hearing was held in June 1991. Rice's position was essentially that he had entered into the plea agreement for expanded restitution because he believed at the time of plea that restitution was controlled by *United States v. Berrios*, 869

F.2d 25 (2d Cir.1989), that the subsequent decision in *Hughey* conferred a benefit upon him which he now claimed, that he continued to accept the plea agreement and that if he agreed to restitution to the extent allowed by *Hughey,* he was in compliance with the agreement. The judge then enforced the plea agreement as written and ordered restitution in the amounts sought by the government. There was no genuine dispute about how the amount of the restitution was derived or the accuracy of that amount. The rate at which payment was to be made was based on Rice's ability to pay, which the court made clear would be under periodic review.

Rice then appealed from the restitution portion of his sentence.

## II. Discussion

The authority of a district judge to order a convicted defendant to make restitution to a victim of his crime has been governed for some time by the VWPA. Rice's guilty plea was accepted by the district court in February 1990. At that time, the relevant statutory provision authorized federal courts, when sentencing defendants convicted of certain offenses (including those to which Rice pled guilty) to order "in addition to or ... in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663. In June 1991, when the restitution portion of Rice's sentence was finally imposed, the Supreme Court had already handed down its decision in *Hughey.* In that case, the Court interpreted the VWPA, specifically including the language quoted above, to limit restitution under the VWPA to losses caused by the offenses of conviction. In this case, Rice was convicted of offenses specifically relating to certain condominium units but the restitution amount was based upon related but uncharged conduct involving the cost of mortgages for the entire condominium project. Rice therefore argues that the district court exceeded its powers in ordering restitution of $559,071.45 to Chicago Title and that this portion of his sentence must be vacated and remanded for an order consistent with *Hughey.*

The government's first response to Rice's argument is that the plea agreement here, which allowed restitution in an amount not limited to the counts of conviction, was not affected by *Hughey* because that decision was not intended to apply to cases in which there is a plea agreement regarding restitution. The government also argues that even if *Hughey* did temporarily limit, despite a plea agreement to the contrary, a court's authority to order restitution in an amount greater than the loss attributable to the counts of conviction, a 1990 amendment to the VWPA made such plea agreements enforceable by the time Rice was ordered to pay restitution.

Turning to the first government argument, in *Hughey* the Court did not consider a restitution order imposed to carry out an undertaking accepted as part of a plea bargain. While there was a guilty plea in *Hughey,* the defendant there pled guilty to only one count of a six-count indictment charging fraudulent use of a specific credit card, made clear that he admitted nothing but the facts pertaining to that one count and strenuously opposed the government's attempts to obtain restitution for the victims of defendant's use of other credit cards. 110 S.Ct. at 1981–82.

Although a plea agreement obviously could not authorize a judge to impose whatever punishment the government and the defendant agreed to, the government urges us to hold that a punishment that acknowledges a defendant's existing civil liability pursuant to a plea agreement is not barred by *Hughey.* The authorities are split on that proposition. Three circuits have held restitution beyond the count of conviction barred even on a plea bargain, see *United States v. Braslawsky,* 951 F.2d 149, 151 (7th Cir.1991); *United States v. Snider,* 945 F.2d 1108, 1110–13 (9th Cir.1991); *United States v. Cockerham,* 919 F.2d 286, 288 n. 2 (5th Cir.1990), but the Eighth Circuit appears to have ruled the other way, see *United States v. Marsh,* 932 F.2d 710, 713 (8th Cir.1991). See also *United States v. Domincio,* 765 F.Supp. 1259, 1260

(E.D.Va.1991) (*Hughey* did not address plea agreement allowing restitution beyond count of conviction); *United States v. Johnson,* 767 F.Supp. 243, 247 (N.D.Ala. 1991) (1990 amendment merely clarified existing law). This issue is now of little importance due to the 1990 amendment to the VWPA, the effect of which we explain below.

We do not find it necessary to consider this issue further because we agree with the government's second argument. The VWPA was amended, effective November 29, 1990, by the Crime Control Act of 1990, Pub.L. No. 101–647, § 2509, 104 Stat. 4789, 4863 (1990), so that when Rice was ordered to pay restitution in June 1991, section 3663(a)(3) provided that "[t]he court may also order restitution in any criminal case *to the extent agreed to by the parties in a plea agreement* " (emphasis supplied). It is true, as Rice's counsel emphasized at oral argument, that a judgment of conviction for Rice was filed in October 1990, which was prior to the effective date of the amendment. That judgment, however, imposed a prison sentence of 18 months but left the amount of restitution open, to be decided at a later date. In June 1991, when the district court ordered restitution in an amount beyond the offenses of conviction, the amended statute had been in effect for six months, and it clearly authorized the court's order.

■ Although Rice's offenses occurred well before the 1990 amendment, we do not see why this should change our conclusion. Certainly, there was no unfairness involved. Rice did not rely on the *Hughey* limitation on restitution when he entered into the plea agreement allowing the restitution later imposed, and when he thereafter pled guilty. *Hughey* had not yet been decided, and the governing law in the Second Circuit—on which Rice concededly did rely—allowed such a sentence. See *United States v. Berrios,* 869 F.2d 25, 28–32 (2d Cir.1989). We believe that the government is correct in arguing that there is no ex post facto problem here in changing the procedure to permit a judge to order restitution according to the terms of a plea bargain. See *United States v. Arnold,* 947 F.2d 1236, 1238 n. 2 (5th Cir. 1991). The amendment to the VWPA did not enhance the punishment for an offense that had already been committed. The amendment merely provided that a specified type of plea agreement could be enforced from that point on. At the time of his plea, Rice committed himself to make restitution of perhaps as much as "several million dollars;" he obtained the advantage of his negotiated plea, thus limiting his exposure to imprisonment and fines to only the four counts of the information; he never tried to withdraw from the guilty plea agreement and he has in fact continued to assert its vitality. In short, we believe that the district court did not commit error in ordering restitution in the amount it did.

■ Rice, who claims that he is presently indigent, also argues that the district court abused its discretion in failing to consider his ability to pay restitution, as required by 18 U.S.C. § 3664(a). The record shows that the district court considered all the relevant factors and reached a compromise figure. Furthermore, this court has noted that "restitution orders would be severely limited if district judges did not have discretion to discount the importance of present indigency in performing the statutory balance." *United States v. Atkinson,* 788 F.2d 900, 904 (2d Cir. 1986).

Finally, Rice contends that the government failed to meet its burden of demonstrating the losses sustained by Chicago Title. The full record belies this contention, and it does not deserve further discussion.

Affirmed.