UNITED STATES of America,
Plaintiff–Appellee,

and

Federal Deposit Insurance Corporation,
Claimant–Appellee,

v.

Leif D. SODERLING, Defendant–
Appellant.

In re Paul B. ANDREW,
C.P.M., Receiver.

UNITED STATES of America; Federal
Deposit Insurance Corporation,
Plaintiffs–Appellees,

v.

Jay S. SODERLING, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Leif SODERLING, Defendant–
Appellant. (Three Cases)

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jay S. SODERLING, Defendant–
Appellant. (Four Cases)

UNITED STATES of America,
Plaintiff–Appellee,

v.

Leif D. SODERLING; Jay S. Soderling,
Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Leif SODERLING; Jay S. Soderling,
Defendants–Appellants.

United States of America,
Plaintiff–Appellee,

v.

Leif D. SODERLING; Jay S. Soderling,
Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Leif D. SODERLING; Jay S. Soderling,
Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Leif SODERLING, Defendant–Appellant.

Nos. 88–1216, 88–1217, 89–10645, 89–
10657, 89–10661, 90–10016, 90–10033, 90–
10096, 90–10097, 90–10451, 90–10452, 91–
10410, 91–10411 and 89–10658.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 8, 1991.*

Decided June 30, 1992.

* The panel unanimously finds this case suitable
for decision without oral argument. Fed.

R.App.P. 34(a); 9th Cir.R. 34–4.

Jay S. Soderling, in pro. per.

Leif D. Soderling, in pro. per.

Charles B. Burch, Chief Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before: FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.

PER CURIAM.

Defendants Jay and Leif Soderling challenge restitution orders imposed by the district court under the Victim and Witness Protection Act.

### Facts

"Seventy-five percent of the failures of FSLIC-insured institutions between 1934 and 1986 occurred after 1979." Note, *FIR-REA: Controlling Savings and Loan Association Credit Risk Through Capital Standards and Asset Restrictions*, 100 Yale L.J. 149, 152 (1990).[1] Included within that statistic is Golden Pacific Savings and Loan Association, then owned and operated by brothers Jay and Leif Soderling. While in control of Golden Pacific, the Soderlings engaged in a number of questionable transactions, eventually drawing the unwanted attention of the federal government. In short order, the government charged the Soderlings with one count of misapplication of funds in violation of 18 U.S.C. § 657 and one count of purposefully overvaluing property in violation of 18 U.S.C. § 1014.

*A. The Original Restitution Order:* After charging the Soderlings, the government continued its investigation of the twosome, focusing on five other allegedly illegal transactions engineered by the Soderlings and effectuated through Golden Pacific. Aware of this ongoing investigation, the Soderlings struck a deal: They agreed to plead guilty to the two counts contained in the pending information and to make restitution for the losses stemming from those two offenses and from the other five transactions, all in return for the government's agreement not to prosecute them for offenses arising out of the other five transactions.[2]

The government and the Soderlings then brought their plea agreement to the district court. After fully and openly exploring the agreement, the district court accepted it and sentenced the Soderlings.[3] In accordance with the plea agreement, the court ordered the Soderlings to make restitution for losses stemming from the seven transactions in question. It constructed this order under the authority of both the Federal Probation Act (FPA) and the Victim and Witness Protection Act (VWPA).[4] At the time of sentencing, the Soderlings did not challenge either the district court's authority to fashion the restitution order or the amount of restitution required by that order.

*B. The Contempt Restitution Order:* Not long after the Soderlings were sentenced and ordered to pay restitution, the government began to suspect that the brothers were purposely wasting their assets and avoiding their obligation to make restitution. It thus moved to have the district court issue a temporary restraining order preventing the Soderlings and related parties from disposing of any assets within the Soderlings' control. The district court agreed with the government and issued the TRO.

The TRO, however, didn't stop the Soderlings: They continued to squander the assets within their control. This now amounted to criminal contempt because it violated a lawful court order, and the district court found them guilty of such. And as a condition of probation for the Soderlings' contempt convictions, the district court once again ordered them to make restitution in the full amount of the original restitution order.

*C. Challenging the Restitution Orders:* The Soderlings did not challenge the legality of either the original or the contempt restitution orders when they were first imposed. Eventually, however, they questioned the court's authority to issue

---

1. The FSLIC was not created until 1934. *See* Title VI of the National Housing Act, 48 Stat. 1246 (1934).

2. The Soderlings claim that the government never made the return promise not to prosecute them for criminal offenses related to the other five transactions. The evidence on record supports the contrary conclusion.

3. The Soderlings claim that the district court did not fully explore their plea agreement in open court and failed to include the restitution order

in its pronouncement of sentence. Again, however, the record supports contrary conclusions.

4. The Soderlings argue that the district court could not order restitution under both the FPA and the VWPA. However, they concede that, at a minimum, the court could order restitution under the VWPA. Because we conclude that the district court's restitution order is authorized by the VWPA, we need not decide whether it had the authority to issue the order under both the FPA and the VWPA.

either order. The orders were unlawful, they believed, because they covered losses not caused by the conduct underlying their respective offenses of conviction. Thus, they brought a motion under former Federal Rule of Criminal Procedure 35(a) to correct their sentences. The district court denied their motion as to the original restitution order but granted it as to the contempt restitution order. To correct the illegal portion of the contempt restitution order, the court modified it to reflect only the loss of assets caused by the Soderlings' contumacious conduct that would have otherwise been available to pay down the original restitution order (an amount totaling $333,677). The contempt restitution order also was made payable only to the extent the Soderlings did not fully satisfy the original restitution order. The Soderlings appealed the district court's rulings as to both restitution orders.[5]

### Discussion

### I

The primary question on appeal is whether the amount of restitution the Soderlings agreed to pay as part of their plea bargain was authorized by law.[6] It is undisputed that this amount is greater than the loss caused by the offenses to which the Soderlings pleaded guilty. It is also undisputed that the amount of the Soderlings' restitution, if authorized at all, can now be authorized only under the VWPA because when the Soderlings' probation was revoked, their obligation to pay restitution under the FPA simultaneously terminated. Thus, the Soderlings contend, the reasoning of *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), requires a reversal here, for the Supreme Court in *Hughey* held that the VWPA authorizes restitution "only for losses caused by the conduct underlying the offense of convic-

tion." *Id.* at 416, 110 S.Ct. at 1982. The government, on the other hand, argues that the *Hughey* rule permits a defendant to agree in a fully bargained-for plea agreement to make restitution for losses caused by offenses other than those to which he pleads guilty in return for a promise by the government not to prosecute the defendant for those other offenses.

*A.* Between 1983 and 1987, a federal district court could order a defendant to pay restitution under two different statutes. The first statute, the Federal Probation Act, provided that a probationer "[m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." 18 U.S.C. § 3651. This statute was repealed on November 1, 1987. The second statute, the Victim and Witness Protection Act, provided that "a defendant convicted of an offense" may be required to "make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). This statute became effective January 1, 1983, and is still in effect.

▮ The government argues that because the language of these two statutes is nearly identical, our precedents interpreting the FPA apply equally to the VWPA. And our FPA precedents clearly allow restitution to be ordered for losses stemming from offenses other than those on which there was a conviction *if* the defendant agrees to such in a plea bargain in return for a promise by the government to drop or not pursue the other offenses. *United States v. Whitney*, 785 F.2d 824, 825–26 (9th Cir.1986), *amended*, 838 F.2d 404, 404 (1988); *United States v. Black*, 767 F.2d 1334, 1343 (9th Cir.), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985); *Phillips v. United States*, 679 F.2d 192,

---

**5.** Since the Soderlings' sentencing, the FDIC settled various claims it had against entities related to Golden Savings and Loan Association (the RLI settlement). The Soderlings argue that the RLI settlement extinguished any restitution obligation they had. We need not address this issue because it has already been decided by another panel of this court and we are bound by that decision. *United States v. Soderling*, Nos. 90-

15442 et al., unpublished disposition at 7 [946 F.2d 899 (table)].

**6.** In this opinion we address only the restitution issues raised by the Soderlings. We addressed the Soderlings' other contentions in a previously filed unpublished disposition.

194–96 (9th Cir.1982). The government also points to *United States v. Duvall*, 926 F.2d 875, 877 (9th Cir.1991), where we concluded that the *Phillips* interpretation of the FPA survived *Hughey*.

We find the government's reasoning persuasive. The language and purpose of the FPA and VWPA as they relate to the limitation on restitution to losses caused by the offense of conviction are nearly identical. Indeed, "[t]he FPA's provision for restitution is more specifically tied to the offense of conviction than the language of the VWPA." *United States v. Cook*, 952 F.2d 1262, 1264 n. 3 (10th Cir.1991). It follows that if the FPA allows restitution beyond the offense of conviction when the defendant agrees to such in a plea agreement, so too does the VWPA. Moreover, in 1950, decades before *Hughey* was decided, we adopted an interpretation of the FPA strikingly similar to *Hughey's* interpretation of the VWPA. *Compare Karrell v. United States*, 181 F.2d 981, 986 (9th Cir.) (restitution under FPA is limited to losses sustained by the victim as a result of the offense for which the defendant was convicted), *cert. denied*, 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950), *with Hughey*, 495 U.S. at 420, 110 S.Ct. at 1984 (restitution under VWPA limited to loss caused by the conduct underlying the offense of conviction). The *Phillips* court concluded that its rule was consistent with *Karrell*. 679 F.2d at 194. We are therefore compelled to conclude, especially given our holding in *Duvall*, that the *Phillips* rule is also consistent with *Hughey*.

**7.** Thus, we held that *Hughey* overruled our earlier, contrary VWPA precedents, such as *United States v. Pomazi*, 851 F.2d 244, 249 (9th Cir. 1988). *See Sharp*, 941 F.2d at 815.

**8.** Section 2509 of the Crime Control Act of 1990 does overrule our decision in *Sharp* by creating a new section 3663(a)(2), but even that new section does not overrule any part of *Hughey*. In fact, while the *Sharp* court believed its conclusion was compelled by *Hughey*, at least one other circuit has reached the opposite conclusion. *See United States v. Bennett*, 943 F.2d 738, 740–41 (7th Cir.1991).

Thus, in contrast to the Soderlings' conclusion that the 1990 amendments to section 3663(a)

*B.* Our recent decision in *United States v. Sharp*, 941 F.2d 811 (9th Cir.1991), does not alter our conclusion. In *Sharp*, we interpreted *Hughey* to require that "[e]ven when the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction." *Id.* at 815.[7] This interpretation of the VWPA in *Sharp* is identical to our interpretation of the FPA in *United States v. Gering*, 716 F.2d 615, 623–25 (9th Cir.1983), further strengthening the argument that the "offense of conviction" limitation in the VWPA is no different from—or at least no greater than—the same limitation in the FPA.

Nor is our chain of logic broken by the fact that Congress amended the VWPA after the decision in *Hughey* to state explicitly that a "court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." Crime Control Act of 1990, Pub.L. No. 101–647, § 2509, 104 Stat. 4863 (codified at 18 U.S.C. § 3663(a)(3)). While the Soderlings argue that the only reason Congress would have created the new section 3663(a)(3) is to overrule *Hughey*, that section did no such thing; following the 1990 amendments, the precise holding of *Hughey*—that restitution cannot be ordered for losses stemming from offenses for which there was no conviction and which were neither agreed to in a plea bargain nor part of a criminal scheme that was a necessary predicate to the offenses on which conviction was had— is still good law.[8]

were meant to overrule *Hughey*, it is more likely they were meant to clarify an uncertain area of the law, leaving intact the Court's interpretation of section 3663(a) in *Hughey* but making certain that lower courts did not read *Hughey* to limit the scope of the VWPA to something narrower than what Congress intended. This is by no means an unusual tack for Congress to take. *See* Eskridge, *Overriding Supreme Court Statutory Interpretation Decisions*, 101 Yale L.J. 331, 424–27 (appendix I) (noting 7 examples from the 100th and 101st sessions where Congress amended statutes not to overrule any prior Supreme Court decision, but rather in response to confusion in interpreting the relevant statute).

■ The Soderlings further argue that inclusion of the word "also" in new section 3663(a)(3)—"[t]he court may *also* order restitution ... to the extent agreed to ... in a plea agreement"—means that before the adoption of 3663(a)(3), plea agreements could not expand the scope of restitution beyond losses caused by the offense of conviction. However, the Soderlings fail to realize the full breadth of new section 3663(a)(3); it permits courts to *"also* order restitution *in any criminal case* to the extent agreed to ... in a plea agreement." Thus, whereas section 3663(a)(1) is limited to restitution for offenses under title 18 or section 1472 of title 49, section 3663(a)(3) applies to offenses under *any* title of the United States Code. "Also" refers to this expansion beyond title 18 offenses, not to an expansion of the VWPA to cover plea agreements in title 18 cases (which, as we have already explained, the VWPA covered before the 1990 amendments).

We are not unmindful that our holding brings us into conflict with the majority of the other circuits that have addressed this issue. *See United States v. Young*, 953 F.2d 1288 (11th Cir.1992); *United States v. Braslawsky*, 951 F.2d 149 (7th Cir.1991); *United States v. Cockerham*, 919 F.2d 286 (5th Cir.1990). *But see United States v. Marsh*, 932 F.2d 710 (8th Cir.1991); *United States v. Domincio*, 765 F.Supp. 1259 (E.D.Va.1991).[9] Our holding also conflicts with the earlier decision of this court in *United States v. Snider*, 945 F.2d 1108 (9th Cir.1991), which was subsequently vacated on a motion by the government. *See* 957 F.2d 703 (9th Cir.1992). However, we see no principled way to distinguish *Phillips*, *Black*, *Whitney* and *Duvall* so as to permit us to reach a result different from that which we reach today. *Cf.* Special Project, *Congress Opens a Pandora's Box—The Restitution Provisions of the Victim and Witness Protection Act of 1982*, 52 Fordham L.Rev. 507, 513 (1984) (concluding that even under a restrictive view, the *Phillips* rule "should apply with equal force to the VWPA").

■ C. The Soderlings argue that even if the VWPA allows them to agree to make restitution for losses caused by certain offenses in return for having the government agree not to pursue convictions on those offenses, the district court erred in calculating the amount of restitution the Soderlings agreed to make. They first argue that the amount of restitution is higher than authorized by law because the district court included in its calculations losses that could have been avoided had the FDIC properly mitigated damages. However, we are unable to find any support in the VWPA or our caselaw for the proposition that the victim of a criminal offense is required to mitigate damages.[10]

■ The Soderlings also challenge numerous aspects of the district court's restitution calculations. District courts have wide latitude in fashioning and calculating restitution orders so long as the orders are authorized by law, and we review such orders only for abuse of discretion. *United ed States v. Koenig*, 952 F.2d 267, 274 (9th Cir.1991); *United States v. Koenig*, 813 F.2d 1044, 1046 (9th Cir.1987).[11] We have reviewed the amount of the district court's restitution order in this case in light of the Soderlings' challenges to that amount and

---

**9.** Our concern over this conflict is diminished by the fact that our interpretation of the VWPA involves a purely transitional rule: For offenses occurring after November 29, 1990, section 3663(a)(3) clearly provides that plea agreements allowing for restitution greater than the losses caused by the offenses of conviction are authorized by law. Section 3663(a)(3) may even serve to validate some plea agreements relating to offenses occurring before November 29, 1990, so long as the plea agreement was entered after November 29, 1990. *See United States v. Rice*, 954 F.2d 40 (2d Cir.1992); *United States v. Arnold*, 947 F.2d 1236 (5th Cir.1991).

**10.** We hold only that the VWPA does not *require* a district court to offset losses by amounts that could have been avoided through proper mitigation. We express no opinion on whether the VWPA *permits* a district court to limit damages due to a victim's failure to mitigate properly.

**11.** Contrary to the Soderlings' assertions, the restitution order entered by the district court is not unlawful because it used a formula—to which the Soderlings agreed—to set the amount of restitution. *See Koenig*, 813 F.2d at 1046–1047; *Phillips*, 679 F.2d at 194. Also contrary to the Soderlings' assertions, they were not entitled to a jury trial on the amount of the restitution order. *See United States v. Keith*, 754 F.2d 1388, 1391–92 (9th Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985).

find no abuse of discretion. *Cf. United States v. Smith*, 944 F.2d 618 (9th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

## II

In addition to challenging the original restitution order, the Soderlings also take issue with the restitution the district court ordered as a condition of probation for their contempt convictions. Although they advance a number of arguments against the legality and the propriety of the contempt restitution order, we need only consider one argument, which we find persuasive. That argument is that the Soderlings' violation of the TRO, which formed the basis of their contempt convictions, caused no new "loss or destruction of property of a victim of the offense," 18 U.S.C. § 3663(b)(1); because the TRO was designed simply to preserve the Soderlings' assets so that they could be used to pay the original restitution order. Yet the amount of restitution owed under the original restitution order remained unchanged by the Soderlings' contumacious conduct.

■■■■ We agree with the Soderlings, though not precisely for the reasons advanced by them. The district court defined the "loss" covered by its contempt restitution order as the "loss of assets available to pay the [original] restitution judgment."

District Court's Rule 35 Order, at 13 n. 7 (August 17, 1990). And it conditioned the contempt restitution order on being made payable only to the extent that the Soderlings did not fully satisfy the original restitution order. *See id.* at 14. However, the original restitution order, as the district court itself noted, *see id.* at 4 & n. 3, was an independent part of the Soderlings' sentences and was extinguished only by satisfaction, not by the passage of time.[12]

Any amount squandered by the Soderlings in violation of the TRO did not alter the amount of restitution they were obligated to make to the FDIC; the FDIC still maintains a right to the full amount of the original restitution order. And to the extent that the Soderlings' squandering of assets lessens the likelihood that the original restitution amount will be paid (because the Soderlings might never make enough money to offset the $333,677 they improperly spent), the contempt restitution order serves no purpose; if the Soderlings cannot pay the original restitution order, thereby triggering their obligation to make restitution on the contempt order, they obviously cannot pay the contempt restitution order. Thus, we vacate the district court's contempt restitution order as not authorized by the VWPA. *See* 18 U.S.C. § 3663(e)(1) ("The court shall not impose restitution with respect to a loss for which the victim

---

**12.** The VWPA does not require an order of restitution to be limited in duration. *See Keith*, 754 F.2d at 1393; *see also United States v. House*, 808 F.2d 508, 511–12 (7th Cir.1986) (correctly interpreting *Keith*). As the *House* court noted:

[Section 3663(f)(2)] protects the victim, not the offender. It limits the duration of a grace period established under [section 3663(f)(1)] and does not terminate the obligation to make restitution. (*Keith* modified the order at hand to impose a five-year period [on restitution payment]. We do not read this as holding that a district court *must* exercise this power under [section 3663(f)(1)], and there is no basis for requiring it to do so in this case.) 808 F.2d at 511–12; *see also id.* at 511 ("The power of a district judge to establish a schedule of repayment under [section 3663(f)(1)] created a risk that the schedule would be so extended as to make the order ineffectual.... So [section 3663(f)(2)] limits the use of [section 3663(f)(1)] to drag out the process of restitution. Such a limit is unnecessary when payment is due immediately under [section 3663(f)(3)].").

We likewise do not read *United States v. Angelica*, 951 F.2d 1007, 1009 (9th Cir.1991), or *United States v. Roberts*, 783 F.2d 767, 771 (9th Cir.1985), "as holding that a district court *must* exercise this power under [section 3663(f)(1)]." *Angelica* simply noted the existence of such power, but did not make its exercise mandatory. 951 F.2d at 1009. *Roberts* involved a remand for the purpose of establishing a restitution payment schedule for the defendant under section 3663 because it was clear the defendant could not make restitution at the present time; it does not hold that section 3663 requires restitution orders to be of limited duration. 783 F.2d at 771; *see also Smith*, 944 F.2d at 624 (noting that if a defendant has not made full restitution by the end of his section 3663(f)(2) payment period despite a good faith, diligent effort, he may petition the court for an extension or a remittitur). *Smith*'s focus on *court-approved* relief from restitution orders not satisfied within the 3663(f)(2) payment period is inconsistent with interpreting the VWPA so that a restitution order is *automatically* extinguished at the end of any 3663(f)(2) period.

has received or is to receive compensation....''); *United States v. Oren*, 893 F.2d 1057, 1065–66 (9th Cir.1990).

Our holding is not meant to imply that the Soderlings' contumacious acts did not cause any loss, but merely that they did not cause any loss to the amount of money owed the FDIC under the original restitution order, which is the measure of loss employed by the district court. On remand, the district court is free to fashion an order of restitution that reflects the actual loss suffered by the FDIC because of the Soderlings' actions.[13]

### Conclusion

The district court's original restitution order is affirmed, its contempt restitution order is vacated, and this case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.

---

**13.** This might be measured by the difference in the time value of money between the time when the FDIC would otherwise have received the $333,677 but for the Soderlings' contumacious acts and the time when they will now receive that same sum of money (assuming this is ascertainable), along with appropriate costs and expenses.