UNITED STATES of America, Plaintiff,

v.

Franklin WINKLER, Defendant.

Crim. A. No. 87–20049–02–DES.

United States District Court,
D. Kansas.

April 2, 1993.

Sheryle L. Jeans, and Michael J. Dittoe, U.S. Dept. of Justice, Richard J. Marien, U.S. Atty., Kansas City, MO, for U.S.

Loren G. Rea, Kansas City, MO, John P. Gerstle, Overland Park, KS, Max Gordon, Charles E. Atwell, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the defendant for reduction of sentence, filed pursuant to Fed.R.Crim.P. 35 (Doc. 402).

In June 1987, the defendant was jointly indicted with four others in a multiple-count indictment alleging a complex scheme of wire fraud involving financial institutions. The defendant was not in the United States at the time of the indictment. After he was determined to be in Australia, extradition proceedings were initiated. The defendant was ultimately brought before this court to answer the charges in September 1990, more than three years after he was indicted.

Following plea negotiations, the defendant pleaded guilty to one count of conspiracy to commit wire fraud, as defined by 18 U.S.C. § 1343, in violation of 18 U.S.C. § 371. The government dismissed the other 31 counts in the indictment against the defendant. On April 15, 1991, he was sentenced to imprisonment for five years and fined $10,000, the maximum penalty under the applicable statute at the time of the alleged offense. In addition, pursuant to 18 U.S.C. § 3663, the court ordered restitution in an unspecified amount equal to the civil judgments awarded in favor of the FSLIC and the FDIC in two related civil cases in this district in which Mr. Winkler was a named defendant, Case Nos. 83–2477 and 85–2216–01 respectively. Pursuant to the plea agreement, any amount of criminal restitution recovered was to be credited toward satisfaction of the civil judgments awarded against the defendant.

The offense for which defendant stands convicted was concluded in 1984, prior to the effective date of the sentencing guidelines. Therefore, the defendant's motion for reduction of sentence must be determined in accordance with Fed.R.Crim.P. 35 as amended by order of the Supreme Court on April 29, 1985. *See* Pub.L. 100–182, § 22, Dec. 7, 1987, 101 Stat. 1266, 1271; *see also United States v. Guardino,* 972 F.2d 682, 685 (6th Cir.1992) (for offense committed prior to No-

vember 1, 1987, the former version of Rule 35 applies). The applicable version of Rule 35 reads as follows:

### Rule 35. Correction or Reduction of Sentence

(a) **Correction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) **Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute ·a permissible reduction of sentence under this subdivision.

*See* Charles A. Wright, Federal Practice and Procedure § 587 (Supp.1992); *see also* Amendments to Rules, 105 F.R.D. 179, 183 (1985) (amendment to Rule 35(b)) (repealed 1987).

The defendant's motion to reduce the sentence was filed on August 21, 1991, more than 120 days after sentence was imposed. However, the defendant's timely appeal was dismissed on June 6, 1991, on the motion of the defendant. Since the motion to reduce sentence was filed within 120 days of receipt by this court of the notice of the dismissal of the appeal, the motion is timely under the applicable version of Rule 35(b).

The defendant contends that (1) his five-year sentence should be reduced because (a) he agreed to assist the government in its prosecution of others and (b) the sentence exceeds that imposed on co-defendants he alleges were more culpable than he; (2) the fine imposed should be vacated or changed to an uncommitted fine; and (3) the order of restitution is excessive as a matter of law.

The court will address each of these arguments in turn.

### 1. *Term of Incarceration*

#### a. *Willingness to Cooperate in Other Prosecutions*

■ Defendant contends that his five-year sentence should be reduced because he agreed to cooperate with the government in its prosecution of two other individuals. The government concedes that the defendant agreed to testify against others, although his cooperation turned out to be unnecessary for reasons that had nothing to do with the defendant.

The court acknowledges defendant's willingness to cooperate with the government, but is not persuaded to reduce the defendant's sentence on this basis. The government entered into a plea agreement with the defendant that in the court's opinion was highly favorable to him, in exchange for defendant's agreement to assist the government by testifying against others with whom he had been associated. The defendant has already derived substantial benefit from his willingness to cooperate in that the government agreed to dismiss 31 other counts in the indictment, all of which charged the defendant with serious felony offenses.

#### b. *Disparity of Sentence Relative to Co-Defendants*

■ The defendant also contends that his sentence should be reduced because his term of imprisonment exceeds those imposed on his co-defendants, who he alleges were more culpable than he. The co-defendants in this case were Mario Renda, Sammy Daily, Frederick Figge, and Leslie Winkler.

Mr. Renda pleaded guilty to two counts of wire fraud charged in the indictment. He was sentenced to two years on one count, to run concurrently with a sentence he was already serving on a conviction in New York. On the other count, however, Renda was sentenced to five years imprisonment, to run consecutive to the two-year sentence. Execution of the five-year sentence was suspended and defendant Renda was placed on probation subject to special conditions, including compliance with a restitution agreement he

entered into in confessing judgment in two civil cases in this district, Case Nos. 85–2216–0 and 89–2094–0.[1] The court specifically determined that Mr. Renda was not a flight risk.

Sammy Daily and Frederick Figge were tried by jury in late 1987. Each was convicted of one count of conspiracy to commit wire fraud, but the jury found them not guilty on all other counts of the indictment. Sammy Daily was sentenced to a term of five years and fined $10,000. Frederick Figge was sentenced to three years and fined $10,000; however, he subsequently died. The convictions of defendants Daily and Figge were later reversed on appeal, and the case was remanded for a new trial. However, the government elected not to reprosecute Daily since he had already served approximately 18 months of his term. On the government's motion, the indictment against him was dismissed by this court.

Leslie Winkler was never located. The government was advised that he died in Israel in 1988. On the motion of the government, this court dismissed the indictment against Leslie Winkler on January 6, 1992.

The court is not persuaded by the defendant's contention that his sentence to a term of five years is excessive considering the sentences imposed on his co-defendants, who he argues were more culpable. Co-defendant Renda, who also entered a plea following negotiations with the government, was sentenced to a controlling term of seven years, only two of which were to run concurrently with the previous sentence in New York. Although he was granted probation on the five-year term, he is nevertheless subject to court supervision and must comply with substantial conditions of probation, including restitution to the victims of his criminally fraudulent conduct.

With regard to the other co-defendants, it suffices to state that a jury found them not guilty on all but one count each of conspiracy. Although Winkler contends that he is less culpable as to the offenses charged than co-defendants Renda and Daily, the court notes that the sentencing process properly takes into consideration a number of factors other than the relative culpability of the defendant. *See, e.g., Genet v. United States,* 375 F.2d 960, 962 (10th Cir.1967) (sentencing judge has duty to consider both the crime and the person committing the crime). Furthermore, a defendant may not rely on the sentences imposed on his co-defendants as a yardstick for his own sentence. *United States v. Castillo–Roman,* 774 F.2d 1280, 1284 (5th Cir.1985); *United States v. Hayes,* 589 F.2d 811, 827 (5th Cir.), *cert. denied,* 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979), *cited with approval in United States v. Trujillo,* 906 F.2d 1456, 1465 (10th Cir.1990), *cert. denied,* 498 U.S. 962, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990).

The five-year sentence imposed on the defendant was the statutory maximum for the offense to which the defendant pleaded guilty. The defendant's assertion that the United States Attorney considered a sentencing recommendation capped at four years in the course of preliminary plea negotiations is totally unpersuasive. Even if the plea agreement had included such a recommendation, and it did not, the plea agreement is not binding on the court in imposing sentence. Further, the plea agreement signed by the defendant clearly stated that any sentencing recommendations made by the government in compliance with the plea agreement were not binding on the court.

In his *pro se* supplemental suggestions in support of his motion, the defendant has also urged the court to consider that his status as an alien allegedly precludes him from eligibility for placement in a halfway house at least six months prior to the conclusion of his term of imprisonment. The defendant cites no authority for his assertion that aliens are ineligible for pre-release placement in a halfway house. Even if true, the court rejects

---

1. Further, in connection with the criminal proceeding in the Eastern District of New York, Case No. 87–CR–423SS–2, Renda forfeited $4.25 million in cash prior to sentencing. In addition, he turned over substantial personal property and real estate in an attempt to satisfy the substantial civil judgments against him. These payments and property transfers were elements of packaged plea negotiations regarding pending criminal proceedings in New York, Kansas, and other jurisdictions, in conjunction with settlement negotiations in the civil proceedings.

this argument as a basis for reducing the defendant's sentence.

For offenses committed prior to the enactment of the sentencing guidelines, the sentencing court retains wide discretion in determining the sentence to be imposed. *See United States v. Ramusack,* 928 F.2d 780, 782 (7th Cir.1991). Similarly, whether to grant a Rule 35 motion for reduction of sentence is within the discretion of the sentencing court. *E.g., United States v. Hart,* 922 F.2d 613, 615 (10th Cir.1990). Based upon all the information available to the court at the time of sentencing, the court reaffirms its decision to sentence defendant Winkler to the maximum term of incarceration authorized by the statute defining the offense to which he pleaded guilty.

### 2. *Fine*

■ Defendant contends in his *pro se* suggestions that the fine of $10,000 imposed as a part of the sentence should be vacated because it violates the defendant's plea agreement. In the alternative, the defendant argues that the fine should be altered so that he may be released before the fine is paid, contending that he lacks funds to pay the fine.

The imposition of a fine authorized by statute in sentencing a defendant is within the discretion of the sentencing court. The fact that the plea agreement provided that the government did not consider a fine appropriate is not binding on the sentencing court; nor is it a persuasive argument in support of vacating the fine.

Whether to impose imprisonment until the fine is paid is also discretionary with the sentencing court, if the sentencing court finds, by a preponderance of the information relied upon in imposing sentence, that the defendant has the present ability to pay the fine. *See* 18 U.S.C. § 3565(a)(1) (repealed 1986, reenacted 1986). Although the defendant contends he has insufficient funds to pay the fine, he submits no evidence whatsoever to support this assertion. Furthermore, whether the court acted within its discretion in imposing the fine depends upon the defendant's ability to pay at the time of sentencing, and the defendant does not contend he was unable to pay the fine at that time.

If the fine remains unpaid following completion of defendant's term of incarceration, and if he remains incarcerated solely for the nonpayment of the fine, a statutory avenue exists by which the defendant may seek discharge upon a judicial determination that the defendant is unable to pay the fine. *See* 18 U.S.C. § 3569. The court therefore rejects the defendant's motion to the extent it seeks to either vacate the fine or modify it to permit his release before the fine is paid.

### 3. *Restitution Order*

The defendant next challenges the court's order requiring restitution in the amount equivalent to the civil judgments entered against him in Case Nos. 83–2477[2] and 85–2216–01,[3] both filed in this district. The defendant contends that the restitution order in effect requires the defendant to pay in excess of $64 million, which he argues is excessive as a matter of law.

Defendant Winkler pleaded guilty and was convicted of the offense of conspiracy to commit wire fraud, following his extradition to

2. Case No. 83–2477 was filed by the FDIC, as receiver for Indian Springs State Bank, against Franklin A. Winkler and F & I Real Estate Holding Company, a company he admittedly controlled. A default judgment was entered on May 30, 1986, in the amount of $1,399,161.64 for unpaid principal loan balances, plus $737,679.78 in interest accrued through May 9, 1986, and $1,000,000 in punitive damages. The total judgment exceeds $3.1 million.

3. Case No. 85–2216 was a civil RICO action filed by the FDIC, in its corporate capacity and as receiver for Indian Springs State Bank, and the FSLIC against Mario Renda, Franklin Winkler, Sammy Daily, and several others, including sev-

eral entities. On January 9, 1987, the court awarded the FDIC a default judgment on all counts of the complaint against Franklin Winkler, First United Management Company, First United Investment Company, and F & I Real Estate Holding Company in the amount of $28,-423,514.37. In addition, FDIC as receiver for the Indian Springs State Bank was awarded a default judgment against the same defendants in the amount of $11,072,926.62, trebled to $33,-218,779.86 pursuant to 18 U.S.C. § 1964(c). Additional amounts were later awarded against the other defendants in that action. The FDIC was ultimately substituted for the FSLIC after it was abolished in 1989.

stand trial for that offense. Relying upon *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), he contends that the amount of restitution ordered may not exceed the loss caused by the conduct that is the basis of the offense for which the defendant was convicted. The defendant argues that the total amount of losses attributable to defendant Winkler's criminal activities as charged in the entire indictment do not exceed $5,231,173. He further argues that the restitution order should be vacated because no losses can be attributed to the specific conduct underlying the single offense of conspiracy to which he pleaded guilty.

In response, the government contends that the restitution order should be modified to require defendant to pay a total of $5,231,-173, the amount the FDIC contends equals losses attributed to Mr. Winkler's criminal activities as charged in that part of the indictment to which he pleaded, plus interest from April 1, 1991.[4]

The court does not accept the defendant's argument that the investors to whom he quoted inflated interest rates lost no money and hence the specific conduct underlying the conspiracy offense to which he pleaded guilty resulted in no losses.[5] The criminal conduct to which the defendant pleaded guilty was for the purpose of inducing investors to purchase certificates of deposit from two particular financial institutions, which in turn were thereby induced to loan money to the defendant and his cohorts in exchange for broker-ing the investors' deposits. The victims of this fraudulent scheme were of course the two financial institutions, and whether or not the investors themselves lost money is irrelevant in determining the propriety of ordering restitution to the FDIC as the successor to the two financial institutions. Further, losses caused by the entire conspiracy to which the defendant pleaded guilty, not just those acts committed by the defendant, can be attributed to the defendant in ordering restitution.[6] *See United States v. Brewer*, 983 F.2d 181, 184–85 & n. 2 (10th Cir.1993) (rejecting defendants' claim that the particular conduct they contributed to the mail fraud conspiracy did not cause any loss).

■ In this case, defendant Winkler entered into a plea agreement in which he agreed to cooperate with the government in the civil litigation brought by the successors to the financial institutions that were the victims of the offenses committed by Winkler and his co-defendants. Specifically, defendant Winkler agreed to a restitution order, with the amount to be determined by the sentencing court following an investigation concerning his financial status. Consistent with the plea agreement, the restitution order provided that any amount of criminal restitution would be credited toward satisfaction of the civil judgments. *See* 18 U.S.C. § 3663(e)(2)(A).

Having entered into the plea agreement, the defendant cannot now be heard to complain that restitution should not have been

---

4. The government misplaces its reliance on *United States v. Burger*, 770 F.Supp. 598, 604 (D.Kan. 1991), aff'd sub nom. *United States v. Cruce*, 968 F.2d 21 (10th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993), for its contention that the defendant may be held responsible for the losses attributable to the defendant arising out of the conspiracy charged in the indictment. One of the defendants in that case had pleaded guilty to four counts in the indictment, including a conspiracy count. He unsuccessfully sought to exclude from the order of restitution losses that were attributable to the conspiracy count to which he had pleaded guilty. In this case, however, defendant Winkler contends that the sole offense to which he pleaded guilty, conspiracy to commit wire fraud, did not result in any losses. *Burger* is therefore inapplicable.

5. Indeed, in his motion to correct the presentence report, the defendant conceded that there were losses to Indian Springs State Bank attributable to his offense behavior, but contended the amount was less than that stated in the report.

6. The court acknowledges that in this case, the extradition treaty between the United States and Australia imposes constraints on the extent to which the court may sentence him for conduct unrelated to the offenses for which he was extradited. *See* Treaty on Extradition, May 14, 1974, U.S.–Austl., 27 U.S.T. 957. However, the defendant concedes that his extradition permitted prosecution for that part of Count 30 that alleged conspiracy to commit wire fraud, the offense to which he pleaded guilty. Hence, restitution may be ordered for losses resulting from that conspiracy, whether or not the particular acts he allegedly contributed to the conspiracy caused losses to the victims.

ordered. The terms of the plea agreement show that the defendant explicitly agreed to cooperate in the civil proceedings against him and understood that the sentencing court would have the discretion to order restitution on the basis of the civil judgments together with information concerning defendant's financial circumstances. Following the plea hearing on October 1, 1990, the defendant sought to expedite sentencing despite the fact that the FDIC had not completed its investigation for purposes of determining the amount of restitution. The defendant acknowledged in these subsequent pleadings that sentencing had been delayed in order to determine the amount of restitution on the basis of complete and accurate financial information. In short, the defendant agreed to make restitution in an amount to be later determined by the sentencing court. *See* 18 U.S.C. § 3663(a)(3) (court may order restitution to the extent agreed in a plea agreement).[7]

■ Furthermore, this court does not read *Hughey* to preclude the sentencing court from relying on the plea agreement itself as authority to award restitution for losses in excess of those directly traceable to the criminal conduct to which the defendant pleads guilty. *Hughey* did not involve such a plea agreement, and it merely held that the sentencing court could not properly rely on 18 U.S.C. § 3579, the predecessor to the pre-amendment version of § 3663, to authorize such a restitution order. *See United States v. Soderling*, 970 F.2d 529, 533–34 & n. 8 (9th

Cir.1992) (*Hughey*'s precise holding was that restitution cannot be ordered for losses stemming from offenses for which defendant was not convicted and which were neither agreed to in plea bargain nor part of scheme that was necessary predicate to offense of conviction); *United States v. Domincio*, 765 F.Supp. 1259, 1260 (E.D.Va.1991) (*Hughey* did not address whether restitution could be awarded in accordance with plea agreement for losses unrelated to offense of conviction).

In *United States v. Marsh*, 932 F.2d 710, 713 (8th Cir.1991), the defendant pleaded guilty to 3 counts of a 15–count indictment charging mail fraud stemming from an investment scheme. The defendant contended on appeal, relying on *Hughey*, that the sentencing court erred in denying his motion to reduce restitution, because the amount ordered exceeded the losses alleged in the counts to which he had pleaded guilty. The Eighth Circuit Court of Appeals held that the sentencing court properly ordered restitution in the amount of $3 million in conformity with the plea agreement, in which the defendant had agreed to restitution up to the full losses suffered by the victims identified in an attachment to the indictment. Similarly, in *United States v. Soderling*, 970 F.2d 529, 532–34 (9th Cir.1992), the Ninth Circuit Court of Appeals upheld an award of restitution imposed on the defendants following their plea agreement to make restitution for losses stemming from seven transactions, even though they were indicted only for two illegal transactions.[8]

7. Within a few months after the Supreme Court decided *Hughey*, Congress amended 18 U.S.C. § 3663 to provide that the sentencing court may order restitution to the extent agreed by the parties in a plea agreement. *See* 18 U.S.C. § 3663(a)(3). The amendment took effect on November 29, 1990, prior to defendant's sentencing on April 15, 1991. While the defendant entered into his plea agreement prior to the effective date of the amendment, the statute in effect at the time of sentencing controls. *See United States v. Guardino*, 972 F.2d 682, 686 & nn. 5–6, 687 (6th Cir.1992); *United States v. Arnold*, 947 F.2d 1236, 1237 (5th Cir.1991); *see also Hughey*, 495 U.S. at 413 n. 1, 110 S.Ct. at 1981 n. 1 (referring to pre-amendment statutory provisions as codified at the time of sentencing). *But see United States v. Scarano*, 975 F.2d 580, 585 n. 7 (9th Cir.1992) (an offense predating § 3663(a)(3) is unaffected by it); *United States v. Soderling*, 970

F.2d 529, 534 n. 9 (9th Cir.1992) (§ 3663(a)(3) may validate some plea agreements relating to offenses occurring before November 29, 1990, so long as the plea agreement was entered after that date); *cf. United States v. Young*, 953 F.2d 1288, 1289–90 (11th Cir.1992) (plea agreement executed prior to November 29, 1990 and sentencing after that date; court did not apply § 3663(a)(3)); *United States v. Arnold*, 947 F.2d at 1237 nn. 1–2 (application of § 3663(a)(3) retroactively to preexisting plea agreements may invoke prohibition against ex post facto laws).

8. Other circuits have interpreted *Hughey* restrictively to preclude restitution orders for amounts in excess of losses attributable to the offense of conviction, even if the defendant's plea agreement authorizes such a restitution order. *See United States v. Guardino*, 972 F.2d 682, 687–88 (6th Cir.1992); *United States v. Young*, 953 F.2d

In this case, the defendant's plea agreement, executed on or about October 1, 1990, essentially agreed to a restitution order in the amount of the judgments against the defendant previously entered in the two civil proceedings brought by the FDIC and FSLIC, the successors to the financial institutions that were the victims of defendant's scheme. The civil proceedings were specifically mentioned by caption and case number in the plea agreement.

In a detailed letter addressed to the court on April 10, 1991, a few days before sentencing,[9] the FDIC essentially recommended that the court impose restitution in the amount of $5,231,173, plus interest accruing from April 1, 1991, at the rate of $1,087.33 per day. The letter thoroughly documents the basis for the calculation of losses resulting from the wire fraud conspiracy and ties the amount of the loss to the defendant's conduct underlying the offense to which he pleaded guilty.

In support of a restitution order, the attorney for the government has the burden of demonstrating the amount of loss sustained by a victim as a result of the offense. *See* 18 U.S.C. § 3664(d); *see also United States v. Wright*, 930 F.2d 808, 810 (10th Cir.1991) (restitution to the victim must bear a relationship to the loss caused). Any dispute as to the proper amount of restitution is to be resolved by the sentencing court by the preponderance of the evidence. 18 U.S.C. § 3664(d). The government has demonstrated to the court's satisfaction by a preponderance of evidence that (1) the FDIC's civil damages as a result of the defendant's conduct at issue in the civil proceedings against him amount to $5,231,173, plus interest, and (2) this amount of loss was the result of the specific alleged criminal conduct to which defendant Winkler pleaded guilty. Furthermore, the plea agreement explicitly envisioned a restitution amount as determined in the civil proceedings brought by the FDIC. For all of these reasons, the court hereby fixes the amount of restitution in the amount recommended by the FDIC and by the government.[10]

IT IS BY THE COURT THEREFORE **ORDERED** that the defendant's Rule 35 motion (Doc. 402) is denied to the extent it seeks a reduction of the defendant's sentence to imprisonment for a term of five years.

**IT IS FURTHER ORDERED** that the defendant's motion is denied to the extent it seeks to vacate or modify the $10,000 fine.

**IT IS FURTHER ORDERED** that the indefinite amount of restitution previously ordered at the time of sentencing is hereby fixed at $5,231,173, plus interest accruing

---

1288, 1290 (11th Cir.1992); *United States v. Braslawsky*, 951 F.2d 149, 151 (7th Cir.1991); *United States v. Cockerham*, 919 F.2d 286, 288 n. 2 (5th Cir.1990). In addition, the Ninth Circuit refused in *United States v. Snider*, 957 F.2d 703, 706–07 (9th Cir.1991), to uphold a restitution order on the basis of the plea agreement for an offense that was not within the scope of § 3663(a)(1). In *United States v. Scarano*, 975 F.2d 580, 585 n. 8 (9th Cir.1992), the Ninth Circuit noted the apparent conflict between *Snider* and its subsequent opinion in *United States v. Soderling*, 970 F.2d 529 (9th Cir.1992), discussed *supra* in text for its narrow interpretation of *Hughey*, but found it unnecessary to address it since the restitution ordered in *Scarano* did not exceed losses attributed to the offense of conviction.

**9.** A copy of the letter is attached to the defendant's original motion to reduce his sentence pursuant to Rule 35.

**10.** Although the defendant contends tangentially that he lacks the funds to pay restitution, he does not suggest that the court erred in deciding to order restitution, or that the court erred in ordering immediate restitution as opposed to payment in installments, as the court could have permitted pursuant to 18 U.S.C. § 3663(f)(1) and (2). *See* 18 U.S.C. § 3663(f)(3) (if not otherwise provided, restitution shall be made immediately); § 3664(a) (factors to consider in determining whether to order restitution). Even if the defendant had submitted evidence supporting his apparent contention that he is without funds, restitution may be ordered despite a defendant's present indigency. *See United States v. Wise*, 990 F.2d 1545, 1547–48 (10th Cir.1992) (citing *United States v. Rogat*, 924 F.2d 983, 985 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991)); *United States v. Sunrhodes*, 831 F.2d 1537, 1546 (10th Cir.1987); *see also* 18 U.S.C. § 3664(a) (defendant's financial resources are one of several factors to be considered). Since the evidence clearly shows that the defendant has earning potential and thus may possibly be able to pay the amount ordered, it is irrelevant whether or not he has assets at the present time. *See Rogat*, 924 F.2d at 985.