4 F.3d 987
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Kenneth NEWNAM, Defendant-Appellant.
 No. 92-5504.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: March 11, 1993.
Decided: September 1, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Senior District Judge. (CR-92-30-G)
 Susan Hayes, Greensboro, North Carolina; Charles L. White, II, Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Harry L. Hobgood, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before WIDENER, HALL, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Ronald Kenneth Newnam appeals the sentence imposed on his conviction for mail fraud, in violation of 18 U.S.C.Secs. 1341, 2 (1988). We vacate the restitution portion of Newnam's sentence, due to the district court's failure to make the requisite factual findings, and remand to the district court. Otherwise, we find no error and affirm the sentence.
 
 I.
 
 2
 In September 1988, Newnam and codefendants Carlis Vernon and Joseph Lamonica started Adventure Consulting Corporation ("ACC") in Greensboro, North Carolina, to provide creative financing to clients otherwise unable to obtain large commercial loans from more conventional sources. Each client was charged a $3,000 non-refundable application fee and a loan origination fee of $60,000 for each one million dollars to be borrowed. Clients were told that loans of one million to ten million dollars could be obtained through either courtesy bank deposits, consisting of money from pension funds, with an agreement that the banks would in turn loan money to ACC clients, or transfers of U.S.-purchased bonds and securities to an affiliated European financial organization for arbitrage transactions, with the resulting profits being loaned to ACC clients. Clients were falsely advised that ACC had a five hundred million to seven hundred fifty million dollar line of credit with brokerage firms, had succeeded in obtaining substantial loans in the past, and would return the entire loan origination fee if a loan was not obtained within forty-five days.
 
 
 3
 Between September 1988 and December 1989, ACC received over $900,000 in fees from thirteen clients, including $870,000 in refundable loan origination fees. The largest fee, $300,000, was paid by Wilmington Yacht Club ("WYC") to obtain a five million dollar loan for a construction project. This transaction with WYC forms the basis for Count Three of the indictment, to which Newnam pled guilty. Instead of using the $300,000 to secure a loan, ACC deposited that money into its general business account and used it to pay operating expenses. No loans were obtained for any ACC client. Only $216,000 was returned to clients; the remaining $654,000 in refundable fees was spent by Defendants for operating or personal expenses and never repaid.
 
 
 4
 Newnam co-founded ACC and served as its vice-president and secretary-treasurer. He controlled the books and finances, had knowledge of all income received and expenditures made, was directly involved in office acquisition and staff hirings, and received a salary equal to ACC president Vernon and only ten percent less than ACC director Lamonica. Newnam also met directly with clients and persuaded them to engage ACC's services. In late 1989, when clients became suspicious and began filing law suits for the return of their loan origination fees, Newnam falsely assured them that their money was in European financial intermediaries, despite his personal knowledge that the money had been spent by ACC. Newnam and Vernon initiated a forestalling scheme in which ACC clients were paid a sum equal to one percent of their loan origination fees in return for a forty-five day extension for loan acquisitions by ACC. Unbeknownst to the clients, these payments were made from the clients' own fees or from the fees of other ACC clients. This forestalling scheme triggered the mailings from ACC clients upon which the six-count indictment is predicated.
 
 
 5
 Newnam was sentenced to twenty-one months imprisonment and ordered to pay $300,000 in restitution.
 
 II.
 
 6
 Newnam contests three aspects of the district court's restitution order. First, he contends that the district court failed to determine his ability to pay. Second, the district court purportedly erred by basing its restitution order on the court's perception of the judiciary's lenient treatment of white collar criminal defendants. Finally, Newnam argues that the restitution amount should be discounted by the value of property assigned to WYC by ACC.
 
 A.
 
 7
 A district court imposing restitution is required to make "specific factual findings with respect to a defendant's resources, financial needs, and earning ability." United States v. Bailey, 975 F.2d 1028, 1031 (4th Cir. 1992); see also 18 U.S.C.A.Secs. 3663, 3664 (West 1985 & Supp. 1992); United States Sentencing Commission, Guidelines Manual, Sec. 5E1.2 (Nov. 1991). Our review of the record confirms the Government's concession that no such findings were made. We must therefore vacate the order of restitution and remand that portion of the judgment for further findings consistent with Bailey.
 
 B.
 
 8
 Given the vacatur of the district court's restitution order, Newnam's contentions concerning the court's white collar crime comments are moot. Notwithstanding vacatur, we find that the court's comments were neither inappropriate nor indicative of improper bias. See, e.g., United States v. Bakker, 925 F.2d 728, 740 (4th Cir. 1991).
 
 C.
 
 9
 Finally, Newnam claims that the restitution amount should be offset by the value of ACC property-a ten acre tract of land in Greensboro, North Carolina, and a residence in Pinehurst, North Carolina-assigned by ACC, through Newnam and Vernon, to WYC in April 1990, in an attempt to satisfy a $300,000 judgment obtained by WYC for its loan origination fee. At the time of the assignment, the properties were under a contract for sale for $552,000, were subject to a $220,000 mortgage held by Bankers Trust of North Carolina, and had a combined tax value of $342,330. The sale fell through, as did WYC's other attempts to sell the property. Rather than incur additional losses, WYC returned the properties to Bankers Trust.
 
 
 10
 Disputes as to the proper amount of restitution are resolved by the district court according to the preponderance of the evidence. 18 U.S.C.A. Sec. 3664(d). After the Government satisfied its burden of proving the amount of WYC's loss, see id., the court appropriately placed the burden of demonstrating any repayment or mitigation of that amount on Newnam. Id. ("The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."). Finding that Newnam failed to satisfy that burden, the court refused to deduct the value of the assigned ACC properties from the restitution order.
 
 
 11
 Newnam argues that any ACC property legally assigned by him as an officer of ACC should be considered restitution by Newnam. However, corporate property belongs to the separate corporate entity and not to the individual shareholders, directors, and officers that comprise the corporation. See, e.g., 3 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations Sec. 853 (1986 & Supp. 1992); Russell M. Robinson, II, Robinson on North Carolina Corporation Law Secs. 2.8, 3.5(a) (1990 & Supp. 1992). Any transfer by ACC to WYC cannot be considered a transfer by Newnam and, therefore, cannot discount any personal restitution obligation he may have.
 
 
 12
 According to Newnam, the property constitutes compensation, and its value should be discounted against WYC's total loss. 18 U.S.C.A. Sec. 3663(e)(1). However, WYC could have preserved its recovery only by assuming the outstanding mortgage and, thereby, risking additional losses. We find WYC's decision to surrender the property to Banker's Trust was a sound business decision which cannot release or reduce Newnam's restitution obligation. Hence, the assignment was not "compensation."
 
 
 13
 Finally, Newnam claims that WYC had to mitigate its losses. Neither the Victim and Witness Protection Act, 18 U.S.C.A. Secs. 3663, 3664, nor the Sentencing Guidelines requires a district court to offset a victim's losses by amounts that could have been avoided through proper mitigation. United States v. Soderling, 970 F.2d 529, 534 & n.10 (9th Cir. 1992). WYC's unsuccessful efforts to recoup its losses can neither offset those losses nor preclude a restitution order predicated thereon.
 
 
 14
 Hence, we find the court did not abuse its discretion in its calculation of the restitution owed. United States v. Bruchey, 810 F.2d 456, 458 (4th Cir. 1987).
 
 III.
 
 15
 Newnam contests various aspects of the Guidelines calculations ascribed by the district court. First, he contends that the district court erroneously denied his motion for a "minor participant" downward adjustment under U.S.S.G. Sec. 3B1.2(b). Next, the court purportedly erred by increasing the base offense level for fraudulent offenses by ten levels. Finally, Newnam contends that the district court erroneously denied his motion for a substantial assistance departure.
 
 A.
 
 16
 A district court's finding as to a defendant's role in an offense is reviewed for clear error. United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir. 1989). The Government's evidence demonstrated that Newnam's conduct was both material and essential to the successful commission of the ACC scheme. United States v. Palinkas, 938 F.2d 456, 460 (4th Cir. 1991), vacated, 60 U.S.L.W. 3651 (U.S. 1992), reinstated, 977 F.2d 905 (4th Cir. 1992). We find Newnam failed to carry his burden of showing a lesser degree of culpability, United States v. Gordon, 895 F.2d 932, 935 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (U.S. 1990), and the district court's denial of the "minor participant" adjustment was not clearly erroneous.
 
 B.
 
 17
 According to Newnam, the court's erroneous increase of his base offense level was based upon an inaccurate finding that the loss caused by the criminal offense equalled the $654,000 in unpaid refundable fees and, therefore, was in excess of $500,000. U.S.S.G. Sec. 2F1.1(a), (b)(1)(K). This calculation resulted in a sentencing range of twenty-one to twenty-seven months. At sentencing, defense counsel elicited testimony from FBI Special Agent Dennis Evans that, in his opinion, Newnam believed he was engaged in legitimate business deals until approximately March 1989. Based upon that testimony, Newnam contends his offense level should be based only on the money received by ACC after March 1989 which, according to Agent Evans' report, totalled $487,000. This argument would result in an offense level increase of nine levels, see Sec. 2F1.1(b)(1)(J), and a sentencing range of eighteen to twenty-four months.
 
 
 18
 Assuming arguendo that Newnam did not form the requisite criminal intent until March 1989, Newnam has failed to explain ACC's failure to refund all previously-received loan origination fees after ACC defaulted on its self-imposed forty-five day deadlines for loan acquisition. As the officer in charge of ACC's books and finances, he had the duty and ability to return those fees, and the knowledge that those fees had been spent rather than used for loan acquisition. Moreover, Newnam's late 1989 misrepresentation of the location and use of the fees and active participation in the forestalling scheme, both targeted at concealing fraudulent activities taken before and after March 1989, constituted "acts and omissions committed or aided and abetted by the defendant ... in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense." U.S.S.G. Sec. 1B1.3(a)(1). His knowing and intentional perpetuation of ACC's fraudulent schemes permitted the court to ascribe the entire $654,000 loss to Newnam. U.S.S.G. Sec. 2F1.1, comment (n.7).
 
 
 19
 Finally, Newnam's guilty plea to a count of the indictment which expressly incorporated all preceding allegations constituted an admission to the allegation in preceding paragraph eleven that the Defendants obtained $873,000 in loan origination fees from ACC clients. Reducing that amount by the $216,000 refunded by ACC results in a conceded loss in excess of $500,000. See United States v. Mullins, 971 F.2d 1138, 1143 n.5 (4th Cir. 1992). The district court's finding of a loss in excess of $500,000, and the ensuing offense level increase of ten, was not clearly erroneous. See United States v. Rothberg, 954 F.2d 217, 219 (4th Cir. 1992).
 
 C.
 
 20
 Newnam contends his substantial assistance to the government, by way of information that allegedly caused Joseph Lamonica to plead guilty, should have afforded him a departure under U.S.S.G. Secs. 5K1.1, 5K2.0. A discretionary refusal by the district court to depart is not reviewable on appeal, unless the refusal was based on the court's mistaken view that it lacked the authority to depart. United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.), cert. denied, 59 U.S.L.W. 3244 (U.S. 1990). In this case, the record indicates that the court merely exercised its authority not to depart. Accordingly, this Court lacks jurisdiction to review that refusal to depart.[1]
 
 IV.
 
 21
 Finally, Newnam seeks a remand for resentencing, in order to receive the additional one-level reduction for acceptance of responsibility under the amended version of U.S.S.G. Sec. 3E1.1(b) (Nov. 1992), which came into effect four months after his June 30, 1992, sentencing.
 
 
 22
 A sentencing court may modify an imposed term of imprisonment based upon an amendment to the Guidelines "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.A. Sec. 3582(c)(2) (West 1985 & Supp. 1992). A sentencing court may consider a subsequent sentence reduction by retroactively applying the amendments listed inSec. 1B1.10(d). U.S.S.G. Sec. 1B1.10(a). Section 3E1.1(b) was modified by amendment 459, which is not listed in Sec. 1B1.10(d). "If none of the amendments listed in subsection (d) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. Sec. 3582(c)(2) is not consistent with this policy statement." U.S.S.G. Sec. 1B1.10(a). Because the retroactive application of Sec. 3E1.1(b) is inconsistent with the applicable policy statement, Newnam's sentence may not be modified. See United States v. Havener, 905 F.2d 3 (1st Cir. 1990). We therefore deny Newnam's requested remand for resentencing.
 
 V.
 
 23
 For the reasons stated herein, we affirm the sentence imposed, with the exception of the restitution order. We vacate the restitution order and remand that portion of the judgment for further findings concerning Newnam's ability to pay restitution.[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 24
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 We note that several circuits have rejected similar attempts to use Sec. 5K2.0 and 18 U.S.C.A. Sec. 3553(b) (West 1985 & Supp. 1992) in order to bypass the required Government motion for departure under Sec. 5K1.1. See, e.g., United States v. Chotas, 968 F.2d 1193, 1195-96 (11th Cir. 1992); United States v. Goroza, 941 F.2d 905, 909 (9th Cir. 1991)
 
 
 [2]
 We also grant the "Motion to Allow Withdrawal of Trial Attorney and Substitution of Attorney Susan Hayes."